## FRANKLIN TRUST CO. v. CITY OF LOVE-LAND, COLORADO, et al.

(Circuit Court of Appeals, Eighth Circuit. December 3, 1924.)

### No. 6710.

**1. Municipal corporations ⬤⟿864(4)—Bonds for municipal light plant held not "debt," within constitutional limitation.**

Amendment of city ordinance providing for issuance of bonds for construction of municipal light and power plant, payable from revenues of plant, which provided that city would covenant with bondholders to pay into fund for retirement of bonds a stated rate for electric current used by city, *held* not to make such bonds debts of city, within Const. Colo. art. 11, § 8, limiting indebtedness to 3 per cent. of assessed valuation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

**2. Courts ⬤⟿366(1)—Decision of state Supreme Court conclusive on interpretation of state Constitution, laws, and ordinances.**

The determination of the state Supreme Court in its construction of state Constitution, statutes, and city ordinances should be accepted by the federal courts as final and conclusive on the same questions.

**3. Injunction ⬤⟿114(2)—Bondholders and trustee under mortgage have no interest authorizing them to maintain injunction to restrain bond issue by city.**

Holders of mortgage bonds of light and power company, being only creditors of mortgagor, and trustee under mortgage, not being taxpayers of municipality in which mortgaged property is situated, have no such interest in subject-matter as authorizes them to bring suit to restrain issuance of bonds for construction of municipal light and power plant.

Appeal from the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Injunction by the Franklin Trust Company against the City of Loveland, Colo., and others, to enjoin issuance of municipal bonds. From a decree of dismissal, plaintiff appeals. Affirmed.

Paul W. Lee, of Ft. Collins, Colo. (George H. Shaw, of Ft. Collins, Colo., on the brief), for appellant.

John H. Fry, of Denver, Colo. (James H. Pershing, of Denver, Colo., Ab H. Romans, of Loveland, Colo., and Robert G. Bosworth, of Denver, Colo., on the brief), for appellees.

Before LEWIS, Circuit Judge, and MUNGER and MILLER, District Judges.

LEWIS, Circuit Judge. This suit was brought by appellant to enjoin the City of Loveland, Colorado, from issuing bonds for the construction of a municipal light and power plant, because, as alleged, the bonds would create an indebtedness of the city in excess of the amount permitted by the State constitution, which reads (Section 8 of Article 11):

"No city or town shall contract any debt by loan in any form, except by means of an ordinance, which shall be irrepealable, until the indebtedness therein provided for shall have been fully paid or discharged, specifying the purposes to which the funds to be raised shall be applied, and providing for the levy of a tax, not exceeding twelve (12) mills on each dollar of valuation of taxable property within such city or town sufficient to pay the annual interest and extinguish the principal of such debt within fifteen, but not less than ten years from the creation thereof, and such tax when collected shall be applied only to the purposes in such ordinance specified until the indebtedness shall be paid or discharged. * * * The aggregate amount of debt so created, together with the debt existing at the time of such election, shall not at any time exceed three per cent. of the valuation last aforesaid. * * * The valuation in this section mentioned shall be in all cases that of the assessment next preceding the last assessment before the adoption of such ordinance."

This limitation on amount of indebtedness is also statutory. The amount of the bonds authorized by the city is in excess of three per cent. of the assessed valuation. The right and power of the city to erect its own plant is not questioned or doubted; the restriction relates only to raising funds for that purpose. The ordinance authorizing the erection of the plant and the issuance of the bonds did not provide for a tax levy to meet payments of interest and principal or any part thereof. It sets out the form of the bonds, designating them as "Loveland Municipal Light and Power Revenue Bonds," each of which when issued should contain this in the body of the bond and as part thereof:

"This bond is issued for the purpose of acquiring a municipal hydroelectric light and power system by the City of Loveland, in full conformity with the constitution and laws of the State of Colorado and the ordinances and resolutions of said city, duly adopted and approved prior to the issue hereof, and is payable solely out of a special fund, designated the Loveland Electric Light and Power Fund, composed of the receipts derived by the City from the light and power system acquired as hereinbefore recited, and owned and operated by the city,

and it is hereby certified, recited and warranted that for the payment of this bond, the City of Loveland will create and maintain said fund, deposit therein all receipts derived from such electric light and power system and, out of such receipts and as an irrevocable charge thereon, will pay this bond and the interest accruing thereon, in the manner provided by the ordinance, and amendments thereto, under which this bond is issued. And it is further certified and recited that all the requirements of the law have been fully complied with by the proper officers of said city in the issue of this bond."

Also each interest coupon attached to each of said bonds was to contain a clause that the city would pay the bearer the amount thereof "out of the Loveland Electric Light and Power Fund, but not otherwise." Section 8 of the ordinance provides that the bonds "shall be payable only out of the revenues derived from the municipal light and power system placed in a fund to be created as in this ordinance provided, to be known as the Loveland Light and Power Revenue Fund." Sections 11 and 12 of the ordinance read thus:

"Section 11. That there is hereby established and created a fund to be known and maintained as the Loveland Electric Light and Power Fund, to be derived as follows:

"(a) The City of Loveland hereby irrevocably covenants and agrees with each and every holder of Loveland Municipal Light and Power Revenue Bonds, issued under the provisions of this ordinance, that it will, through the appropriate action of its City Council, establish and enforce a schedule of charges for electric current sufficient, at all times punctually to pay the interest accruing upon said Revenue Bonds, to discharge the principal thereof at maturity, and to cover all operating expenses and maintenance and depreciation charges, all in accordance with such approved methods of operation and accounting as are usually applied in the operation of similar utilities by public and private corporations; and the minimum schedule of charges for current furnished shall be the following, to-wit:

"Metered lighting, minimum 9c per K. W. H.

"Unmetered lighting minimum 5c per K. W. H.

"Power, minimum 5c per K. W. H.

"Stoves, minimum 3¼c per K. W. H.

"(b) For street lighting purposes, the City of Loveland hereby irrevocably covenants and agrees with each and every holder of said Revenue Bonds issued under the provisions of this ordinance, that it will pay into said fund not less than five thousand dollars ($5,000) per annum."

"Section 12. That the Loveland Electric Light and Power Fund hereby established and created is hereby irrevocably pledged for the purposes and payments herein set forth, to-wit:

"(a) Out of such fund there shall first be paid the necessary costs and expenses of the efficient and economical operation of said municipal light and power system, and from such fund there shall be deducted annually a reasonable and suitable amount for the purpose of creating reserves for depreciation of obsolescence in buildings, machinery and equipment.

"(b) The balance of said fund, remaining after the payments and deductions hereinbefore provided for have been made, is hereby irrevocably pledged for the payment of the Loveland Municipal Light and Power Revenue Bonds by this ordinance authorized. Such balance shall be included in the annual appropriation ordinance of the city and shall be devoted to the payment, first of the interest accruing upon said Revenue Bonds and the balance of the retirement of the principal thereof.

"(c) After the foregoing deductions and payments have been made, the surplus shall be applied to the payment of the interest upon and the principal of the Loveland Municipal Light and Power General Obligation Bonds, which may be issued and be outstanding under the provisions of this ordinance."

Section 11 was amended by eliminating subdivision (b) and substituting therefor the following:

"(b) For such electric current as is used from said plant by the City of Loveland for street lighting or other municipal purposes, the City of Loveland irrevocably covenants with each and every holder of said Revenue Bonds, issued under the provisions of this ordinance, as amended, that it will pay into said fund a sum of money equivalent to the amount it would have charged private consumers for a like amount of electric current at the rate per kilowatt hour charged private consumers for unmetered lighting."

That change was made while the cause was pending in the lower court, and was brought into the record by supplemental bill. Thereupon on motion of appellees the suit was dismissed, because, as held by the trial court, the bonds when issued would not be an indebtedness of the city within the mean-

ing of the constitution or statute. This appeal challenges that order.

[1, 2] Before this suit was brought O. D. Shields and others filed their bill in the State court against the City of Loveland, presenting the same issue that is presented in this case, and asking for the same relief. They challenged the validity of the proceeding taken by the city council, as taxpayers of the City of Loveland. Relief was denied them, they appealed to the State supreme court and their case was finally disposed of by that court in its opinion found in Shields v. City of Loveland, 218 P. 913, 74 Colo. 27, wherein it was said:

"We do not think that they [bonds] amount to a debt within the intent of the Constitution or statute. The definitions of the word 'debt' are many, and depend on the context and the general subject with reference to which it is used. 17 C. J. 1371. Its meaning in the sections of the Constitution and statutes now before us must be determined by their purpose, which was to prevent the overburdening of the public and bankruptcy of the municipality. Clearly the revenue bonds are not within that purpose. The public can never be overburdened by that which it is under no obligation to discharge, nor can the city become bankrupt by what it does not have to pay."

That opinion was before the change was made in Section 11, sub. (b), of the ordinance, and did not consider what effect if any that change might make on the issue presented; but we think it clear that the change does not help appellant. In fact, if it has any effect, it is to narrow the basis of appellant's contention. There is no ground for a claim that the bonds are to be a lien on the plant, or that the holders could look to the plant for their payment; nor can general taxation be resorted to for that purpose. The opinion of the State supreme court can mean nothing else. Even if our judgment was to the contrary, this ruling of the highest court of the State in its construction of the State constitution, statutes and city ordinances should be accepted by us as final and conclusive as against a litigant who brings the same question here. Any other course would result in intolerable conflict and confusion in matters of entirely local interest. Old Colony Trust Co. v. Omaha, 230 U. S. 100, 116, 33 S. Ct. 967, 57 L. Ed. 1410; St. Louis, etc., Land Co. v. Kansas City, 241 U. S. 419, 427, 36 S. Ct. 647, 60 L. Ed. 1072; Johnson v. St. Louis, 172 F. 31, 35, 96 C. C. A. 617, 18 Ann. Cas. 949. We have, of course, considered the opinion of this court in City of Ottumwa v. City Water Supply Co., 119 F. 315, 56 C. C. A. 219, 59 L. R. A. 604, relied upon by appellant. All that need be said about that case to show that it has no application here is the fact that the indebtedness there authorized in excess of the constitutional limit was to be paid in part by general taxation.

[3] There is another reason why the order of dismissal should be sustained. The Western Light & Power Company, a Colorado corporation, had an electric light plant in the City of Loveland, at the time the city decided to erect a municipal plant. It had similar plants in other towns, about twenty-six in all, in that part of the State. It also supplied light and power to coal mines and other industrial plants in that section. Its power plant is in the Town of Lafayette, where it generated and from which it distributed all the current needed for light and power. It mortgaged all of its property thus owned in 1915, to secure a large indebtedness evidenced by its negotiable notes or bonds. The appellant, a New York corporation, is the trustee named in that mortgage. It does not claim to be the owner of any property in the City of Loveland. It does not allege that it has any interest in the subject matter of this suit other than the fact that it is trustee for the holders of the bonds issued by the Western Light & Power Company. It alleges that all of the property of the Western Light & Power Company has been recently taken over by the Public Service Company of Colorado, a Colorado corporation, and that the Public Service Company owns the electric light plant in the City of Loveland on which it pays taxes. It is not alleged that the mortgage in which appellant is made trustee requires or obligates the appellant to pay taxes on the mortgaged property. Appellant has no interest in the subject matter of this suit. It is not a taxpayer and does not come within the rule that a taxpayer may maintain this kind of suit. Crampton v. Zabriskie, 101 U. S. 601, 609, 25 L. Ed. 1070; Massachusetts v. Mellon, 262 U. S. 447, 486, 43 S. Ct. 597, 67 L. Ed. 1078; Colorado Paving Co. v. Murphy, 78 F. 28, 23 C. C. A. 631, 37 L. R. A. 630. The Western Light & Power Company, and the Public Service Company, after it purchased, could have appropriately brought such a suit, because they were taxpayers on property within the city and as such their rights would be injuriously affected if the proposed bond issue created a general indebtedness of the city. No right of appellant will be affected, and it will suffer no loss or in-

jury even if the bonds constitute such an indebtedness. We are not advised that holders of the mortgage bonds can maintain a suit like this—no such claim is made. They are only creditors of the mortgagor. The result is this, appellant is without right in its own behalf, and no authority has been cited, we know of none, sustaining the right of appellant to maintain this action simply because it is trustee under the mortgage. We think it has no such right. The decree of dismissal is

Affirmed.